John D. SULLIVAN and Joy A. Sullivan, Appellants,

v.

ST. LOUIS STATION ASSOCIATES, Respondent.

No. 54440.

Missouri Court of Appeals, Eastern District, Division Three.

March 28, 1989.

Motion for Rehearing and/or Transfer to Supreme Court Denied April 18, 1989.

Application to Transfer Denied June 13, 1989.

Richard E. Schwartz, St. Louis, for appellants.

Ben Ely Jr., St. Louis, for respondent.

DOWD, Presiding Judge.

John Sullivan was injured while operating a forklift on a construction site owned by St. Louis Station Associates (SLSA). Sullivan and his wife sued SLSA, but the trial judge directed a verdict for SLSA at the close of the Sullivans' evidence. The Sullivans now appeal and we affirm.

SLSA, holder of a 99 year lease, planned to construct a hotel at St. Louis Union Station. To further this goal, SLSA hired both a construction management firm and an operating agent. At all times relevant to this appeal, Dunfy Hotel Corporation held the position of operating agent as an independent contractor. Dunfy hired Baring Industries to supply, unload and install laundry equipment for the hotel and Baring subcontracted the job of unloading and installing the laundry boiler system to Wolfert Heavy Hauling (Wolfert). Wolfert hired John Sullivan through a union hall.

On November 20, 1984, Wolfert planned to lower the laundry boiler into the sub-basement of the hotel. This boiler weighed 11,500 pounds and was approximately 10 feet high and 7 feet in diameter. The procedure Wolfert chose to lower the boiler involved two forklifts. One forklift was equipped with a homemade jib and "come-along chain" which was attached to the boiler. This arrangement was designed to prevent lateral movement of the boiler, not to bear the weight of the boiler.

At the beginning of the operation, the boiler rested on a wooden cribbing at the edge of the ten foot deep sub-basement. The fortified boiler stood in the upper basement level while Mr. Sullivan's forklift was in the sub-basement. Mr. Sullivan's forklift lifted the boiler off the cribbing while the forklift with the come-along chain moved to steady the load. Both forklifts moved so the boiler cleared the edge and was situated above the sub-basement. They then began to lower the boiler to the sub-basement floor. Before the boiler reached the floor, the come-along chain shattered and part of the chain struck Mr. Sullivan's hard hat causing it to break and producing severe head injuries. After the accident, the boiler was still resting on Mr. Sullivan's forklift, although it had tilted and was leaning against the wall.

Mr. Sullivan and his wife filed a three count petition against SLSA.[1] Count I claimed SLSA was liable for its independent contractor's negligence under the inherently dangerous activity exception, Count II claimed SLSA negligently hired an incompetent contractor, and Count III was a loss of consortium claim. At trial, the Sullivans produced, in part, the following witnesses.[2] Mr. Sullivan, the other forklift operator, a third construction worker and the safety director for Mr. Sullivan's union all testified to the events of the day in question and the safety measures, or lack thereof, at the job site. One of SLSA's officers testified concerning the partnership's involvement in the construction process, but the testimony actually accepted on this issue was severely limited. An offer of proof indicated that the witness could have testified that SLSA knew it had contracted for installation of a laundry system, but did not know what type of equipment would be used to complete the contract. Plaintiffs offered depositions from representatives of both Dunfy and Baring. Dunfy's representative testified that it did not concern itself with safety and did not participate in the selection of Wolfert.

---

1. Baring was a third party defendant at trial, but it is not involved in this appeal.

2. Since appellants did not furnish a complete transcript, we assume that the other testimony was irrelevant to the issues on appeal.

Baring's representative testified that it never discussed safety with any of the other parties and that it merely looked up Wolfert in a directory of rigging operators, never making an inquiry into Wolfert's qualifications. This witness also testified that Baring did not follow up on the safety of Wolfert's work.

The Sullivans also presented two expert witnesses. The direct examination of these witnesses, although extensive, elicited little testimony due to the large number of sustained objections. Mr. MacCollum, a consulting safety engineer, was allowed to testify regarding the safety of moving the boiler with forklifts. When asked "what is the custom and practice in the heavy construction industry with regard to the movement [and] placement of boilers," he replied "you use a crane." In his pre-trial deposition, Mr. MacCollum stated that if the lift had been performed with a proper crane there "would be practically no risk of harm." During an offer of proof at trial, he testified that the work was inherently dangerous, but further questioning revealed that he felt all heavy construction involves a high risk. Mr. Alfeld, an architect, was ultimately not allowed to testify. The offers of proof revealed that he would have testified the work was inherently dangerous, that a crane should have been used and that the methods used violated OSHA safety standards.

At the close of plaintiffs' case, defendants moved for a directed verdict based on plaintiffs' failure to present evidence making a submissible case. The trial court granted this motion.[3] The Sullivans now appeal in four basic points. They first challenge the directed verdict, claiming that they made a submissible case under all their theories of liability. The final three points challenge the trial court's restriction of certain evidence, namely: (1) testimony as to SLSA's failure to take safety measures and to hire a competent contractor; (2) OSHA regulations; and (3) expert testimony.

Appellants initially claim that the trial court erred in granting the motion for directed verdict because they made a submissible case under the inherently dangerous, negligent hiring and negligent retention theories of liability. A directed verdict is a drastic measure only applicable where, under the facts and inferences presented, reasonable minds must agree that plaintiff was not entitled to recover. *In re Estate of Mapes*, 738 S.W.2d 853, 855 (Mo. banc 1987). In reviewing the grant of such a motion, the appellate court should view the evidence in the light most favorable to the plaintiff. *Rustici v. Weidemeyer*, 673 S.W. 2d 762, 765 (Mo. banc 1984). With these principles in mind, we review each of the liability theories separately.

■ In general, a landowner is not liable for bodily harm caused by the tortious acts of an independent contractor or its employees, but this rule does not apply where the work involved is inherently dangerous because, in such situations, the employer has a non-delegable duty to guard against that inherent danger. *Smith v. Inter–County Telephone Co.*, 559 S.W.2d 518, 521 (Mo. banc 1977). This exception applies to work "which the employer should recognize as necessarily requiring the creation ... of a condition involving a peculiar risk of bodily harm to others unless special precautions are taken." *Id.* (quoting *Stubblefield v. Federal Reserve Board of St. Louis*, 356 Mo. 1018, 204 S.W.2d 718, 722 (1947)). A task falls into this category if it necessarily creates a danger requiring active care to counteract and such tasks must be distinguished from situations where the danger is created by the negligent manner of performing a task. *Id.* at 522. The Missouri Supreme Court established the criteria for a submissible case under this theory in *Smith v. Inter–County Telephone Co.*, 559 S.W.2d 518 (Mo. banc 1977). Plaintiff must present evidence showing that:

(1) performance of the contract necessarily involves some inherently dangerous

---

**3.** The record on appeal does not contain any written order of dismissal, any trial transcript, or any minute entry reflecting this disposition,

but since the parties agree that this ruling occurred, we will accept it as fact for purposes of the appeal.

activity; (2) the activity which caused the damage was reasonably necessary to the performance of the contract and was inherently dangerous; (3) the one contracting with the independent contractor negligently failed to insure that adequate precautions were taken to avoid damage by reason of the inherently dangerous activity; and (4) plaintiff's damage was a direct result of such negligence.

*Id.* at 523.

The second Restatement of Torts discusses the inherently dangerous activity exception in sections 416 and 427. Comment d of section 427 states that the exception does not apply either to situations where "the negligence of the contractor creates a new risk, not inherent in the work itself or in the ordinary or prescribed way of doing it" or to a contractor's collateral negligence as defined in section 426, which should be read in connection with section 427. Section 426 of the Restatement, defines a contractor's collateral negligence as negligence that "consists solely in the improper manner in which [the contractor] does the work;" creates a new risk, not inherent in the work; and that the "employer had no reason to contemplate ... when the contract was made."

The application of the inherently dangerous activity exception in Missouri was further explicated in *Hofstetter v. Union Electric Co.*, 724 S.W.2d 527 (Mo.App.1986). Mr. Hofstetter was injured while helping erect a crane at a construction site. Specifically, he fell and broke his leg while descending from the crane due to the absence of steps leading down from the crane platform. The cause was submitted under the inherently dangerous activity exception and the jury found for Mr. Hofstetter. On appeal, this court reversed, noting that the inherently dangerous activity exception is not applicable when the independent contractor's negligence "creates a new risk, not intrinsic to the work itself, which could have been prevented by routine precautions of a kind which any careful contractor

would be expected to take." *Id.* at 530. The employer is not liable for his contractor's collateral negligence "meaning that negligence which is unusual or foreign to the normal or contemplated risks of doing the work." *Id.* Hofstetter was not injured by the risk inherent in the activity of crane erection, but by the common risk arising from the contractor's failure to follow rudimentary safety standards. This court held that Hofstetter's case did not fall within the inherently dangerous activity exception.

■ The case at bar is similar to *Hofstetter*. Appellants' evidence showed, at best, that the act of moving and lowering the boiler was an inherently dangerous activity because it involved the risk of a large object falling.[4] Mr. Sullivan, however, was not injured by the falling boiler; the boiler did not fall. His injury resulted from the shattering chain. The expert testimony (and even some of the excluded evidence) stated that use of a crane was the preferable, perhaps only proper, method of executing this lift. If a crane had been used, the come-along chain arrangement would not have been necessary. Thus it is clear that Mr. Sullivan's injury was in fact caused by the contractor's choice of method, not by the danger inherent in lowering the boiler. Under the reasoning of *Hofstetter*, the inherently dangerous activity exception does not apply.

In addition, this factual situation fails to meet the second prong of the *Smith* test: the activity which caused the damage, use of the forklift and come-along chain arrangement, was not reasonably necessary to performance of the contract. We can find nothing in the record to dispute this conclusion. In addition to the testimony described previously, the transcript reveals that at one point the trial judge stated: "the rigging was done negligently, we all know that." Even appellants, in their brief, state "the job could and properly should have been accomplished with a small crane." For this reason, and the reasons stated above, the inherently dan-

---

**4.** Mr. MacCollum also testified in his deposition that if a crane had been used, the lift would have been safe. Thus, there was also evidence

indicating that the act of lowering the boiler was not inherently dangerous.

gerous activity exception did not apply to this case as a matter of law. *See Donovan v. General Motors*, 762 F.2d 701, 703 (8th Cir.1985). Appellants were not entitled to instructions on the theory of liability either for failure to require safety precautions in the contract or to otherwise ensure safety precautions were taken.

We are aware of the recent opinion, *Floyd v. Benson*, 753 S.W.2d 945 (Mo.App. 1988), which reversed an order of summary judgment in an inherently dangerous activity case. Floyd was injured by a backhoe while laying pipe in a trench. The court noted that trenching is generaly held to be an inherently dangerous activity. One of its inherent dangers is the risk of being struck by moving equipment, although the danger of caving in is the most common risk. The court found that there was a genuine question of law as to whether Floyd was injured due to collateral negligence because the risk might be inherent in the work. This case is distinguishable from the case at bar. While Floyd was not injured by the generally recognized inherent danger of trenching, he was injured by an activity that *could have been* considered an inherent danger. Sullivan was injured by a risk that *could not have been* considered an inherent danger because it was not a risk that was necessarily associated with the activity.

The second half of appellants' attack on the directed verdict reads as follows:

> Plaintiffs made a submissible case under both the negligent hiring and retention of an incompetent contractor and subcontractor theories since they presented substantial evidence that:
>
> (1) SLSA made no inquiry into the competence of either contractor when it knew this work required special skills to accomplish, and
>
> (2) SLSA failed to either discharge Wolfert itself or require Baring to do so when it was aware or should have been aware of the improper equipment Wolfert was to use to move the boiler, and
>
> (3) Wolfert and Baring were incompetent.

In Missouri, an employer will be held liable for the negligent action of an independent contractor when the employer failed to exercise reasonable care to hire a competent contractor. *Springdale Gardens v. Countryland Dev., Inc.*, 638 S.W.2d 813, 816 (Mo.App.1982). An employer has a duty to select a "skilled and competent" contractor. *Baker v. Scott County Milling Co.*, 323 Mo. 1089, 20 S.W. 2d 494, 499 (1929). Therefore, when the contractor chosen is in fact competent, the employer will not be liable for his negligence despite any lack of care used in the selection. 57 CJS 2d Master and Servant § 592 p. 369. Comment b to section 411 of the second Restatement of Torts explains the rule as follows:

> In order that the employer may be subject to liability it is, therefore, necessary that harm shall result from some quality in the contractor which made it negligent for the employer to entrust the work to him. Thus, if the incompetence of the contractor consists in his lack of skill and experience or of adequate equipment but not in any previous lack of attention or diligence in applying such experience and skill or using such equipment as he possesses, the employer is subject to liability for any harm caused by the contractor's lack of skill, experience, or equipment, but not for any harm caused solely by the contractor's inattention or negligence.

It is well recognized that a contractor's negligence in conducting the work it was hired to do creates no presumption that the employer was negligent in selecting the contractor. *See* 57 CJS 2d Master and Servant § 592 p. 369 and Annot. 78 ALR 3rd 910 p. 918–19 and cases cited therein. One incident of poor judgment does not prove incompetence.

Ignoring the initial problem of whether an employer can be held liable for the negligence of a subcontractor under this theory, we find that appellants' evidence in this case did not prove the prerequisite element of incompetence. Although appellants produced evidence which, if accepted, would show that SLSA failed to conduct a sufficient hiring inquiry and that

Wolfert was negligent in moving the boiler, they failed to present any competent evidence that either Wolfert or Baring were *incompetent.*[5] There was no proof that either contractor had a poor job safety record, a poor reputation or that either lacked sufficient expertise and experience to act in the capacity for which they were hired. The only accusation of ability involves Wolfert's choice of an improper method in one situation—the job which it was hired to execute. Having failed to show SLSA had hired incompetent contractors, appellants were not entitled to a jury instruction on the negligent hiring theory.

■ Similarly, appellants were not entitled to an instruction on the theory of negligent retention of an independent contractor because they failed to show that SLSA had hired an incompetent contractor. We can not find a Missouri case specifically applying a negligent retention theory to an independent contractor situation, but the negligent retention of an employee cases are instructive. In those cases, the plaintiff must demonstrate that the employee had dangerous proclivities, *Gaines v. Monsanto Co.,* 655 S.W.2d 568, 570 (Mo.App.1983), which denotes a course of conduct rather than a single abberation of behavior. Thus, proof of a single incidence of negligence can not prove incompetence for purposes of the negligent retention theory any more than it can do so for the negligent hiring theory.

We are aware of appellants' citation of *Brannock v. Elmore,* 21 S.W. 451 (Mo. 1893), as a negligent retention case involving an independent contractor. Careful reading of *Brannock,* however, reveals no specific reference to the theory of negligent retention. In fact, it appears to involve a negligent hiring theory or a theory of liability for a contractor's failure to follow an ordinance, *See* Restatement (Second) of Torts § 424. Even assuming that *Brannock* does use a negligent retention theory, the facts support our conclusion. Mrs. Elmore had observed the contractor's blasting methods, which violated a city ordinance, for two to three months before

hiring them and for some time prior to the injury. This lengthy course of repeated negligent conduct could be proof of incompetence, while the single incident revealed by appellants' evidence is not.

Because we find that the directed verdict was proper and that the facts of the case did not support submission on the applicable theories, we need not address the other allegations of error. *Courtney v. Emmons,* 702 S.W.2d 139, 142 (Mo.App.1985). We note, however, that the remaining three points concern exclusion of evidence. After reviewing the transcript, we find that the evidence in question would not have affected the submissibility of the case under any of the three theories. The facts of the case, as developed by appellants' own evidence, simply do not fall under any of these theories and there is no indication that appellants were prevented from presenting any additional facts that would have changed this situation.

The decision of the trial court is affirmed.

SIMON and HAMILTON, JJ., concur.

---

**5.** In reviewing the offers of proof, we do not find any excluded evidence probative of this point either.