Charles D. LONERO, Appellant,

v.

John DILLICK, Defendant,

and

Pulitzer, Inc., St. Louis Post Dispatch, LLC and St. Louis Distribution Services, LLC, Respondents.

No. ED 87286.

Missouri Court of Appeals, Eastern District, Division Two.

Dec. 12, 2006.

Charles F. Dufour, Attorney at Law, St. Louis, for appellant.

Marvin L. Lindmark, John P. Pollard, Bobroff, Hesse, Lindmark & Martone, P.C., St. Louis, for respondents.

GARY M. GAERTNER, SR., Judge.

Appellant, Charles D. Lonero ("Lonero"), appeals from the judgment of the Circuit Court of the City of St. Louis, granting summary judgment in favor of Respondents, Pulitzer, Inc., St. Louis Post Dispatch, LLC, and St. Louis Distribution Services, LLC (collectively "Respondents"). In the underlying case, Lonero brought an action against Respondents for economic loss suffered when he was struck by a vehicle driven by Defendant John Dillick's ("Defendant") wife, Julie Dillick (collectively "Dillicks"), and he was unable to recover money damages from the Dillicks' insurance company due to a lapsed policy. We affirm.

The following is the evidence from the record viewed in the light most favorable to Lonero: Pulitzer is the owner and/or operator of the Post. The Post is the publisher of the St. Louis Post–Dispatch newspaper. STL Distribution is a distributor of the St. Louis Post–Dispatch newspaper. The Post contracts with STL Distribution for the delivery of the St. Louis Post–Dispatch newspaper to certain home subscribers, dealer outlets, and vending machines. STL Distribution then enters into an agreement with various independent contractors, each of which is assigned a particular delivery route.

On August 2, 2001, Julie Dillick and STL Distribution entered into a "Single Copy

Agreement" ("Agreement") pertaining to a particular delivery route. Article 15 of the Agreement, titled "Valid Driver's License and Insurance" states, in relevant part:

> [Julie Dillick] ... agrees to obtain and maintain in force during the term of this Agreement, from insurers of [Julie Dillick's] choice ... general liability coverage in the minimum amount of $100,000 bodily injury per person, $300,000 bodily injury per occurrence, and $25,000 property damage (the required insurance) on all vehicles used by [Julie Dillick] (and by employees and/or subcontractors of [Julie Dillick]) to receive, transport, and distribute newspapers under this Agreement. [Julie Dillick] shall name [STL Distribution] as an additional insured under the required insurance. [Julie Dillick] will cause all employees or subcontractors of [Julie Dillick] who drive a vehicle to have a valid driver's license and to have the required insurance on any vehicle owned or used by them. Upon request, [Julie Dillick] agrees to furnish Pulitzer proof of a valid driver's license and such liability insurance coverage, and represents that [Julie Dillick] has a current driver's license and insurance coverage as set forth in Schedule A. [Julie Dillick] will immediately notify Pulitzer if [her] driver's license is revoked or suspended or if the required insurance is canceled or not renewed during the term of this Agreement. [Julie Dillick] shall also cause the insurance company to provide notice of cancellation or nonrenewal of the required insurance to [STL Distribution's] Retail Sales Director.

At the time the Agreement was executed, Julie Dillick also executed a single page document, titled "Schedule A: Driver's License and Insurance Information," which states that she has automobile insurance with Geico, policy number 259–68–99, with coverage including $100,000 bodily injury per person, $300,000 bodily injury per occurrence, and $100,000 property damage. Attached to Schedule A is a photocopy of Julie Dillick's insurance card for policy number 259–68–99 identifying: (1) the insured parties as Julie Dillick and Defendant, (2) the insured vehicle as a 1995 Plymouth Voyager, and (3) the expiration date of the policy as July 6, 2001.

The expiration date listed on the insurance card is approximately 25 days prior to August 2, 2001, which is the date of the execution of the Agreement and the date on which Julie Dillick presented the card as proof of existing insurance coverage. In actuality, Geico had canceled the insurance policy for nonpayment of the premium effective March 3, 2001.

In the early morning hours of January 11, 2002, Lonero was sweeping the parking lot of the Bel–Acres Shopping Center located in Bel–Ridge, Missouri, as was his job, when he was struck from behind by Julie Dillick's Plymouth Voyager van. At the time, Julie Dillick was engaged in the delivery of the St. Louis Post–Dispatch newspapers. As a result of being struck by the Dillicks' van, Lonero suffered personal injuries and damages.

Lonero filed a lawsuit in St. Louis County against Julie Dillick and Defendant, alleging negligence and seeking damages in excess of $25,000. A judgment was entered in St. Louis County Circuit Court: (1) in favor of Lonero as against Julie Dillick in the amount of $75,000, plus costs, and (2) in favor of Defendant.

Subsequently, the St. Louis County trial court issued an order: (1) granting Lonero's motion to vacate the previous judgment entered in favor of Defendant, and (2) granting Lonero leave to dismiss his claim against Defendant without prejudice.

Upon learning that Julie Dillick purportedly had insurance coverage, Lonero filed

a claim with Geico. Geico subsequently advised Lonero that it was denying the claim arising out of the January 11, 2002 accident because the policy was not in effect on that date.

Lonero then filed a two-count petition in the City of St. Louis naming Defendant and Respondents as defendants. Count I of the petition alleged that Lonero's injuries resulted from negligent conduct of Defendant. The trial court entered a default judgment on Count I in favor of Lonero as against Defendant for personal injuries and damages in the amount of $75,000, plus costs.

Count II of Lonero's second amended petition alleged that Respondents were negligent in failing to exercise reasonable care in employing and/or supervising Defendant and/or Julie Dillick as motor vehicle newspaper delivery drivers. Lonero alleged that Respondents should have monitored and assured that Julie Dillick maintained insurance coverage throughout the duration of her employment. As a result, Lonero sought money damages from Respondents due to his "loss of opportunity" to recover the damages from Geico under the Dillicks' lapsed insurance policy.

Respondents filed a motion for summary judgment seeking dismissal of Count II. After the parties filed their respective responses, the trial court conducted a hearing. Following the hearing, the trial court granted Respondents' motion for summary judgment, finding that the elements of duty and causation were lacking. This appeal by Lonero followed.

Our review of a grant of summary judgment is essentially *de novo*. *ITT Commercial Finance v. Mid–Am. Marine,* 854 S.W.2d 371, 376 (Mo.banc 1993). We view the record in the light most favorable to the non-movant. *Id.* Facts set forth in support of the moving party's motion are considered to be true unless contradicted by the non-movant's response. *Id.* A trial court's judgment will be upheld if there are no genuine issues of material fact and if the moving party is entitled to judgment as a matter of law. *Id.* at 380. We will affirm the trial court's grant of summary judgment if it is correct as a matter of law on any ground. *JTL Consulting, L.L.C. v. Shanahan,* 190 S.W.3d 389, 395 (Mo.App. E.D.2006).

In his only point on appeal, Lonero maintains the trial court erred in granting Respondents' motion for summary judgment with respect to Count II of his second amended petition.

■ In his first sub-point on appeal, Lonero asserts the trial court erred in granting Respondents' motion for summary judgment because Respondents negligently supervised Julie Dillick. Lonero contends that Respondents breached their duty to exercise reasonable care by not monitoring her automobile insurance coverage throughout the duration of her employment, thereby causing Lonero's economic injury.

Negligent supervision is derived from the common law tort of negligence. *Cook v. Smith,* 33 S.W.3d 548, 553 (Mo.App. W.D.2000). A cause of action for negligent supervision is established in circumstances where:

A master is under the duty to exercise reasonable care so to control his servant while acting outside the scope of his employment as to prevent him from intentionally harming others or from so conducting himself as to create an unreasonable risk of bodily harm to them if

(a) the servant

(i) is upon the premises in possession of the master or upon which the servant is privileged to enter only as his servant, or

(ii) is using a chattel of the master, and

(b) the master

(i) knows or has reason to know that he has the ability to control his servant, and

(ii) knows or should know of the necessity and opportunity for exercising such control.

*Reed v. Kelly,* 37 S.W.3d 274, 278 (Mo.App. E.D.2000) (quoting Restatement (Second) of Torts section 317 (1965)); *see also Gibson v. Brewer,* 952 S.W.2d 239, 247 (Mo. banc 1997).

In this case, it is undisputed that Julie Dillick was an independent contractor, not an employee of Respondents. Thus, no employer-employee, or master-servant, relationship existed. Because the parties have not provided, and we cannot find, any Missouri cases applying the doctrine of negligent supervision to independent contractors, we find that a cause of action of negligent supervision cannot be sustained under these circumstances. Therefore, the trial court did not err in granting Respondents' motion for summary judgment. Sub-point denied.

In his second sub-point on appeal, Lonero maintains the trial court erred in granting Respondents' motion for summary judgment without addressing his claim that Respondents negligently hired Julie Dillick. Lonero argues that Julie Dillick was incompetent to perform the work of delivering newspapers via motor vehicle without possessing automobile insurance.

■ Respondents contend that Lonero did not plead or present to the trial court the cause of action of negligent hiring. Hence, Respondents argue that Lonero cannot now raise the claim.

Lonero's second amended petition states, in pertinent part:

13. [Respondents] had one or more of the following duties to [Lonero], and to other innocent third parties similarly situated . . . :

. . .

(b) To exercise reasonable care in the employment and supervision of the Dillicks *to monitor and insure that the Required Insurance, as so required under and pursuant to the . . . Agreement, was and remained in full force and effect at all times,* including the time of the January 11, 2002 incident, with respect to all newspaper delivery vehicles and all drivers thereof.

14. [Respondents] breached the aforesaid duties to [Lonero], in that the they failed to exercise reasonable care in employing and/or in supervising the Dillicks either (a) *by not requiring the Dillicks to carry automobile and general liability insurance . . . as so required under and pursuant to the . . . Agreement;* and/or (b) *by not requiring the Dillicks, at regular intervals, to demonstrate that they maintained the Required Insurance* with respect to all newspaper delivery vehicles and all drivers thereof; and/or (c) *by not supervising and monitoring the Dillicks, and/or their own internal files on the Dillicks, to determine and require that the Required Insurance was and remained in full force and effect, at all times during the term of the . . . Agreement,* with respect to all newspaper delivery vehicles and all drivers thereof.

Lonero "clarified" his negligent employment/supervision claim in his response to Respondents' motion for summary judgment. Lonero stated that

although denominated 'Negligent Supervision', [the second amended petition] alleges that [Respondents] acted negligently in initially hiring to deliver newspapers via motor vehicle on August 2, 2001, and/or thereafter continuing to permit to perform such work, a person

whom they knew or had reason to know lacked the insurance coverage necessary to lawfully deliver newspapers via motor vehicle under the Agreement.

Thus, Lonero contends that he raised the claim of negligent hiring to the trial court.

■ Rule 55.05 provides that "[a] pleading that sets forth a claim for relief ... shall contain (1) a short and plain statement of the facts showing that the pleader is entitled to relief and (2) a demand for judgment for the relief to which the pleader claims to be entitled." In order for a petition to sufficiently state a claim for relief, it must set forth allegations of fact supporting each essential element of the claim for which plaintiff seeks relief. *Berkowski v. St. Louis County*, 854 S.W.2d 819, 823 (Mo.App. E.D.1993).

■ In Missouri, the causes of action of negligent hiring and negligent retention are comprised of the same elements. *Reed*, 37 S.W.3d at 277–78. An employer is liable for the negligent action of an independent contractor only when the employer did not exercise reasonable care in hiring a competent independent contractor. *Sullivan v. St. Louis Station Associates*, 770 S.W.2d 352, 356 (Mo.App. E.D. 1989). The employer's duty is to hire a "skilled and competent" contractor. *Id.* So if the independent contractor hired is competent, the employer is not liable for negligence "despite any lack of care used in the selection." *Id.* Thus, an essential element of a negligent hiring claim, in the context of an independent contractor, is that the employer failed to hire a "skilled and competent" independent contractor.

In this case, Lonero did not plead any facts supporting a claim of negligent hiring in the independent contractor context, as nothing in his petition refers to Respondents' hiring of Julie Dillick or that Julie Dillick was not "skilled or competent." Lonero merely pleads that Respondents failed to monitor and assure that Julie Dillick, at all times during her employment, possessed the requisite insurance under the Agreement.

■ A trial court may not enter judgment on a cause of action that a plaintiff did not plead. *Brock v. Blackwood*, 143 S.W.3d 47, 60 (Mo.App. W.D.2004). Because summary judgment is indeed a judgment, it cannot be entered for a cause of action not pled. *Id.* As stated in Rule 74.04(a), a movant may only seek summary judgment "upon all or any part of the *pending* issues." *Id.* (emphasis in original); Rule 74.04(a). Thus, a movant may only seek summary judgment for a cause of action falling within the scope of the pleadings. *Id.* at 60–61.

Therefore, because Lonero failed to sufficiently plead the cause of action of negligent hiring, the trial court did not err in failing to address it. Sub-point denied.

■ In his third sub-point on appeal, Lonero argues that the trial court erred in granting Respondents' motion for summary judgment without addressing his claim that Respondents are liable for the harm caused by Julie Dillick's tortious act under the inherently dangerous activity exception.

■ The general rule is that an employer is not liable for bodily harm caused by the tortious act or omission of its independent contractor. *Smith v. Inter–Cty. Telephone Co.*, 559 S.W.2d 518, 521 (Mo. banc 1977). But there is an exception to the general rule if the work the independent contractor is to perform is an inherently dangerous activity. *Id.; see also Stubblefield v. Federal Reserve Bank of St. Louis*, 356 Mo. 1018, 204 S.W.2d 718, 722 (1947).

■ This exception applies when

[o]ne who employs an independent contractor to do work which the employer should recognize as likely to create during its progress a peculiar risk of physical harm to others unless special precautions are taken, is subject to liability for physical harm caused to them by the failure of the contractor to exercise reasonable care to take such precautions, even though the employer has provided for such precautions in the contract or otherwise. Restatement (Second) of Torts section 416 (1965).

An inherently dangerous activity is an activity that presents a substantial risk of damage unless adequate precautions are taken. *Smith*, 559 S.W.2d at 523. Whether an activity is inherently dangerous as a matter of law is a question of law for the court. *Bowles v. Weld Tire & Wheel, Inc.*, 41 S.W.3d 18, 24 (Mo.App. W.D.2001).

Respondents argue that Lonero also failed to plead facts sufficient to raise this exception, so he cannot raise it now. Lonero's second amended petition states, in relevant part:

13. [Respondents] had one or more of the following duties to [Lonero] and to other innocent third parties similarly situated . . . :

a. To exercise reasonable care in the employment and supervision of newspaper delivery contractors whose work (i) routinely occurs in morning hours prior to sunrise when there is limited visibility of joggers, pedestrians and other individuals who customarily occupy portions of their delivery routes and (ii) consequently involves a substantial risk of harm to such individuals[.]

Thus, we find that although Lonero could have pleaded this exception more expressly and precisely, because an inherently dangerous activity is one that presents a substantial risk of damage and because Lonero pled that the activity at issue involved a substantial risk of harm, Lonero pled sufficient facts to raise this cause of action.

All Missouri caselaw applying the inherently dangerous activity exception has applied it in cases where the injured party suffered physical or bodily injuries. *See, e.g., Bowles*, 41 S.W.3d at 21–22 (carbon monoxide poisoning); *Hatch v. V.P. Fair Foundation, Inc.*, 990 S.W.2d 126, 131 (Mo.App. E.D.1999) (back, legs, and shoulder injuries); *Sullivan*, 770 S.W.2d at 353 (head injuries). Again, the parties did not provide, and we could not find, any Missouri case that applied this exception to circumstances where the injured party suffered only economic loss.

In this case, Lonero does not claim that his physical injuries were the result of the allegedly inherently dangerous activity of delivering newspapers via motor vehicle in the early morning hours and he does not seek damages for his physical injuries. Lonero only alleges an economic injury— the "loss of opportunity" to recover money damages from Geico under Julie Dillick's automobile insurance policy.

Therefore, because we find that the inherently dangerous activity exception does not apply when the injured party has not alleged that he suffered physical or bodily harm, the trial court did not err in granting Respondents' motion for summary judgment. Sub-point denied.

Based upon the foregoing, we affirm the judgment of the trial court.

GEORGE W. DRAPER III, PJ., and ROBERT G. DOWD, Jr., J., Concur.