

# SUPREME COURT OF MISSOURI
## en banc

THOMAS E. THARP, *et al.*,      )      *Opinion issued February 26, 2019*
     )
        Appellants/Cross-Respondents,      )
     )
v.      )      No. SC96528
     )
ST. LUKE'S SURGICENTER-      )
LEE'S SUMMIT, LLC,      )
     )
        Respondent/Cross-Appellant.      )

### APPEAL FROM THE CIRCUIT COURT OF JACKSON COUNTY
**The Honorable Kenneth R. Garrett, III, Circuit Judge**

St. Luke's Surgicenter-Lee's Summit LLC appeals the circuit court's judgment against St. Luke's, following a jury trial, on a negligent credentialing claim brought by Thomas E. Tharp and Paula M. Tharp. The jury found in favor of the Tharps and awarded damages. On appeal, St. Luke's argues the Tharps failed to make a submissible case of negligent credentialing. This Court agrees. The circuit court's judgment is reversed.

### Factual and Procedural History

This case arises from a medical malpractice action against a surgeon operating out of St. Luke's Surgicenter in Lee's Summit. In December 2011, Thomas Tharp underwent a laparoscopic cholecystectomy – a surgical procedure to remove his gallbladder. The

Tharps allege the surgeon damaged Mr. Tharp's hepatic duct and common bile duct during the procedure, causing bile leakage, inflammation, and liver damage. The Tharps settled with the surgeon but proceeded to trial against St. Luke's, alleging St. Luke's negligently granted the surgeon staff privileges at its hospital.

Mr. Tharp's surgeon applied for staff privileges at St. Luke's in 2005 and renewed his privileges several times thereafter. Staff privileges allow physicians to utilize a healthcare facility to admit and treat patients as independent care providers rather than as employees of the facility. Among other requirements, St. Luke's requires physicians applying for staff privileges to disclose whether they have ever been sued for professional malpractice and, if so, the number of lawsuits they have defended. Under St. Luke's bylaws, failing to provide complete information in the application for staff privileges is grounds to automatically remove a physician from consideration. Evidence presented at trial established Mr. Tharp's surgeon had defended more lawsuits at the time he operated on Mr. Tharp than he had reported to St. Luke's on his application.

St. Luke's filed a motion for directed verdict at the close of all evidence, arguing there was insufficient evidence to establish St. Luke's breached any duty owed to Mr. Tharp. St. Luke's also argued its act of granting the surgeon staff privileges was not a proximate cause of Mr. Tharp's injuries. The circuit court overruled the motion for directed verdict. The jury returned a verdict in favor of the Tharps. St. Luke's then filed a post-trial motion for judgment notwithstanding the verdict (JNOV), again arguing the Tharps introduced insufficient evidence to support their claim of negligent credentialing. Again, St. Luke's argued there was insufficient evidence to establish St. Luke's breached

2

any duty owed to Mr. Tharp or St. Luke's actions were the proximate cause of Mr. Tharp's injuries. The circuit court also overruled this motion.

After the verdict, the circuit court entered judgment in favor of the Tharps. St. Luke's filed a motion to modify the judgment, asking the circuit court to order damages awarded by the jury based on future medical expenses to be paid in periodic installment payments instead of a lump sum pursuant to § 538.220.[1] The circuit court sustained St. Luke's motion and amended its judgment accordingly. The Tharps appeal the circuit court's application of § 538.220.2, challenging the constitutional validity of this section, and St. Luke's cross-appeals the circuit court's overruling of its motions for directed verdict and JNOV.

## Jurisdiction

The Tharps challenge the constitutional validity of § 538.220.2 as applied by the circuit court. This Court has exclusive appellate jurisdiction over cases challenging the constitutional validity of a statute. MO. CONST. art. V, § 3. This Court adheres to the "important principle of not reaching constitutional issues unless necessarily required." *Hink v. Helfrich*, 545 S.W.3d 335, 343 (Mo. banc 2018). This Court, therefore, declines to reach the Tharps' points because St. Luke's appeal is dispositive.

---

[1] All statutory references are to RSMo 2000, as amended.

**Standard of Review**

"The standard for reviewing a denied motion for JNOV is essentially the same as for reviewing the denial of a motion for directed verdict." *Sanders v. Ahmed*, 364 S.W.3d 195, 208 (Mo. banc 2012). "A case may not be submitted unless legal and substantial evidence supports each fact essential to liability." *Id*. This Court views all evidence in the light most favorable to the jury's verdict and draws all reasonable inferences in the plaintiff's favor. *Id*. This Court must disregard all conflicting evidence and inferences. *Id*. "A court may reverse the jury's verdict for insufficient evidence only when there is a complete absence of probative fact to support the jury's conclusion." *Id*.

**Analysis**

Generally, modern hospitals staff their facilities with two classes of physicians: staff physicians who are hospital employees and independent physicians to whom the hospital grants staff privileges. Under this arrangement, physicians working under staff privileges are typically independent contractors, not hospital employees. Injured patients in the past, therefore, had difficulty recovering against a hospital for injuries caused by an independent physician because the doctrine of respondeat superior does not apply to independent contractors. *See Central Trust and Inv. Co. v. Signalpoint Asset Mgmt.*, 422 S.W.3d 312, 323 (Mo. banc 2014) ("An employer generally is not held vicariously liable … for the acts of its independent contractors, who are not considered employees for purposes of *respondeat superior*."). Beginning in the 1960s, however, courts began to realize hospitals are businesses that hire, utilize, and benefit from independent contractors similarly to other types of businesses. *See,e.g., Darling v. Charleston Comm. Mem. Hosp.*, 211 N.E.2d 253,

4

257 (Ill. 1965), *cert. denied,* 383 U.S. 986 (1966). The trend toward allowing recovery against hospitals for injuries caused by independent physicians began to accelerate under the theory that "an employer is liable for an independent contractor's negligence when the employer fails to exercise reasonable care in hiring a **competent** contractor." *LeBlanc v. Research Belton Hosp.*, 278 S.W.3d 201, 206 (Mo. App. 2008) (internal quotations omitted) (emphasis added). Indeed, this Court, citing *Darling*, explained, "The fact the defendant doctors here were not employees of the defendant hospital does not necessarily mean the hospital cannot be held liable for adverse effects of treatment or surgery approved by the doctors." *Gridley v. Johnson*, 476 S.W.2d 475, 484 (Mo. 1972).

In *Leblanc*, the court of appeals recognized "Missouri precedent does not bar a negligence claim against a hospital for injuries caused by independent doctors authorized to practice in that hospital." 278 S.W.3d at 206. This theory is called negligent credentialing. *See id.* at 204. The theory focuses on whether a hospital gathered "all the pertinent information to make a reasonable decision as to whether physicians should have access to hospital facilities." Steven R. Weeks, Comment, *Hospital Liability: The Emerging Trend of Corporate Negligence*, 28 IDAHO L. REV. 441, 454 (1992). Negligent credentialing "is merely the application of principles of common law negligence to hospitals in a manner that comports with the true scope of their operations." *LeBlanc*, 278 S.W.3d at 207 (internal quotations omitted). Accordingly, before a hospital can be held liable for an independent physician's negligence, the plaintiff must show "the hospital's duty owed to the patient, the breach of the duty, and the resulting injury from the breach." *LeBlanc*, 278 S.W.3d at 207; *see also Hoover's Dairy, Inc. v. Mid-Am. Dairymen, Inc.*, 700

5

S.W.2d 426, 431 (Mo. banc 1985) (holding the basic elements of a prima facie negligence claim are duty, breach of that duty, causation, and damages).

*Issue preserved for appellate review*

In response to St. Luke's cross-appeal, the Tharps initially argue St. Luke's failed to preserve its insufficient evidence claim. "To preserve a question of submissibility for appellate review in a jury-tried case, a motion for directed verdict must be filed at the close of all the evidence …." *Howard v. City of Kansas City*, 332 S.W.3d 772, 790 (Mo. banc 2011); *see also Sanders* 364 S.W.3d at 207 ("[I]f defendant chooses to put on evidence … [a] motion for directed verdict at the close of all evidence becomes the meaningful motion to preserve the issue…."). Further, "in the event of an adverse verdict, an after-trial motion for a new trial or to set aside a verdict must assign as error the trial court's failure to have directed such a verdict." *Howard*, 332 S.W.3d at 790 (internal quotations omitted). Accordingly, to preserve a jury-tried issue for appellate review, a party must include the issue in both a motion for directed verdict at the close of all evidence, if the defendant puts on evidence, and in a motion for JNOV. *Id*.

The Tharps do not dispute St. Luke's made both a motion for directed verdict and a motion for JNOV. Instead, the Tharps argue the motions were not sufficiently specific to preserve St. Luke's insufficient evidence claim for appellate review. Rule 72.01(a) states a motion for directed verdict "shall state the specific grounds therefor." The Rule 72.01(a) standard, however, is not a demanding one. Indeed, this Court has held an oral motion for directed verdict which stated, "We think plaintiff failed to make a submissible case on issues of negligent causation", sufficiently preserved the issue for appellate review.

6

*Sanders*, 364 S.W.3d at 208.  Here, St. Luke's motion for directed verdict asserted in pertinent part, "[T]he evidence fails to satisfy all of the necessary elements of … negligent credentialing …. [T]here is no evidence that would support the conclusion that there was any breach of duty on the part of defendant that constituted a proximate cause of the event complained of."  St. Luke's motion for JNOV stated in pertinent part, "[P]laintiffs failed to present submissible evidence that [St. Luke's] breached any legally-recognizable negligence duty …. [P]laintiffs' evidence … fails to adequately demonstrate proximate cause."  These specifically articulated grounds were sufficient to preserve St. Luke's insufficient evidence challenge for appellate review.

*Insufficient evidence to support a finding of negligent credentialing*

St. Luke's argues the circuit court erred in overruling its motion for JNOV because the Tharps failed to make a submissible case of negligent credentialing.  Specifically, St. Luke's argues the evidence was insufficient to support a negligent credentialing claim because there was no evidence showing Mr. Tharp's surgeon was incompetent to conduct the procedure he performed and credentialing the surgeon was not the proximate cause of Mr. Tharp's injuries.  "A court may reverse the jury's verdict for insufficient evidence only when there is a complete absence of probative fact to support the jury's conclusion."  *Sanders*, 364 S.W.3d at 208.

A.  Duty

St. Luke's must owe a duty to Mr. Tharp before it can be liable to him for negligence.  *Hoover's Dairy,* 700 S.W.2d at 431; *see also Leblanc*, 278 S.W.3d at 207.  "Whether a duty exists is purely a question of law." *Lopez v. Three Rivers Elec. Coop.,Inc.*,

7

26 S.W.3d 151, 155 (Mo. banc 2000). In general, "a duty exists when a general type of event or harm is foreseeable." *Pierce v. Platte-Clay Elec. Co-op., Inc.*, 769 S.W.2d 769, 776 (Mo. banc 1989). The scope of a defendant's duty is a question of law for the court to resolve. *See Harris v. Niehaus*, 857 S.W.2d 222, 225 (Mo. banc 1993). This Court has never before considered the scope of the duty hospitals owe to their patients when deciding whether to grant staff privileges to a physician. The Restatement of Torts, however, is instructive:

> Section 411 of the Restatement of Torts reads in pertinent part:
>
> An employer is subject to liability for physical harm to third persons caused by his failure to exercise reasonable care to employ a **competent and careful** contractor:
>
> (a) to do work which will involve a risk of physical harm unless it is skillfully and carefully done.

RESTATEMENT (SECOND) OF TORTS § 411 (AM. LAW INST. 1965) (emphasis added). Comment a to Restatement § 411 explains the words "competent and careful" in this context mean a contractor who has the "knowledge, skill, experience, and available equipment which a reasonable man would realize that a contractor must have in order to do the work which he is employed to do without creating unreasonable risk of injury to others." *Id*. cmt. a. Applied in the context of credentialing physicians, a hospital, therefore, must "ensure the competency of its medical staff and the quality of medical care provided through prudent selection, review and continuing evaluation of the physicians granted staff privileges." Barry R. Furrow, *Managed Care Organizations and Patient Injury: Rethinking Liability*, 31 GA. L. REV. 419, 457 (1997) (internal quotations omitted).

8

Accordingly, St. Luke's owes a duty to its patients to credential only competent and careful physicians because it is foreseeable that incompetent or generally careless physicians could injure St. Luke's patients. *See Platte-Clay Elec. Co-op.,* 769 S.W.2d at 776; *see also Baker v. Scott Cty. Milling Co.,* 20 S.W.2d 494, 499 (Mo. 1929) ("concluding the duty rests on the employer to select a skilled and competent contractor"). Because Mr. Tharp was St. Luke's patient, St. Luke's owed him this duty.

*B. Breach*

St. Luke's must breach a duty owed to Mr. Tharp to be liable for negligence. A defendant breaches its duty when it "fail[s] to exercise reasonable care to perform [its] undertaking." *Hoover's Dairy,* 700 S.W.2d at 433; *see also Chavez v. Cedar Fair, LP,* 450 S.W.3d 291, 294 (Mo. banc 2014) ("The common law ordinary negligence rule requires a defendant to exercise the degree of care of a reasonable person of ordinary prudence under similar circumstances …."). As noted above, a hospital's undertaking – its duty – is to credential competent and careful physicians. *See Baker,* 20 S.W.2d at 499; RESTATEMENT (SECOND) OF TORTS § 411. A hospital, therefore, fulfills its duty by using reasonable care to credential competent and careful physicians. *See Hoover's Dairy,* 700 S.W.2d at 433; *Chavez,* 450 S.W.3d at 294. Accordingly, St. Luke's did not breach its duty to the Tharps unless it failed to use reasonable care to determine whether Mr. Tharp's surgeon was qualified and therefore should be granted staff privileges. *Hoover's Dairy,* 700 S.W.2d at 433; *see also Lee v. Pulitzer Pub. Co.,* 81 S.W.3d 625, 634 (Mo. App. 2002) ("In Missouri, an employer will be held liable for the negligent action of an independent contractor when the employer fails to **exercise reasonable care to hire a competent** contractor.")

9

(emphasis added); *Sullivan v. St. Louis Station Assoc's*, 770 S.W.2d 352, 356 (Mo. App. 1989) (concluding employer must **exercise reasonable care in selecting "skilled and competent"** contractor) (emphasis added); RESTATEMENT (SECOND) OF TORTS § 411; *LeBlanc*, 278 S.W.3d at 206 ("concluding an employer is liable for an independent contractor's negligence when the employer fails to **exercise reasonable care in hiring a competent** contractor") (internal quotations omitted) (emphasis added).

The Tharps contend St. Luke's breached its duty by credentialing Mr. Tharps' surgeon because the surgeon did not list all the lawsuits he had defended over his career in his application for staff privileges as required by St. Luke's bylaws. The Tharps' evidence supporting their negligence theory focuses on St. Luke's failure to follow its bylaws, but their evidence fails to address the surgeon's qualifications. It is true, had St. Luke's followed its bylaws by rejecting the surgeon's application for failing to list his entire litigation history, Mr. Tharps' surgeon would not have received staff privileges at St. Luke's. However, St. Luke's failure to follow its bylaws, alone, is insufficient to show St. Luke's breached its duty to credential a competent and careful surgeon. Even though the surgeon did not list every lawsuit he had defended in his career, there was no evidence showing he was unqualified due to the number of lawsuits the surgeon had defended. In fact, the Tharps' own expert admitted there was "no magical number" of lawsuits that denotes a surgeon is unqualified to practice medicine. Indeed, a physician's specialty can have a dramatic impact on how frequently the physician is sued over the course of his or her career. *See* Anupam B. Jena, et al., *Malpractice Risk According to Physician Specialty*,

10

356 NEW ENGLAND J. MED. 629, 632 (2011).[2]  The Tharps presented evidence St. Luke's

deviated from its bylaws, but there was no evidence showing St. Luke's credentialed an

unqualified surgeon.  The record is devoid of any evidence Mr. Tharp's surgeon lacked the

knowledge, skill, and experience necessary to operate on patients like Mr. Tharp "without

creating unreasonable risk of injury."[3]  RESTATEMENT (SECOND) OF TORTS § 411.  Without

evidence showing a reasonable investigation into the surgeon's background and

qualifications would have revealed he was unqualified to perform laparoscopic

---

[2]  In a study of more than 40,000 physicians, totaling nearly a quarter-million – physician years of experience, the authors found, "[t]he proportion of physicians facing a [malpractice] claim each year ranged from 19.1 percent in neurosurgery, 18.9 percent in thoracic–cardiovascular surgery, and 15.3 percent in general surgery to 5.2 percent in family medicine, 3.1 percent in pediatrics, and 2.6 percent in psychiatry," thereby demonstrating the dramatic impact a physician's specialty has on his or her likelihood to encounter a malpractice claim.  Jena¸ et al., *supra* at 629.

[3]  The dissent claims the Tharps presented evidence of incompetence by way of their expert who testified about the surgeon's record of other surgeries, including one which a patient died.  Although this is evidence the surgeon fell below the standard of care in the past, falling below the standard of care "is evidence of ordinary negligence, but not incompetency."  *Tendai v. Mo. Bd. of Reg. for Healing Arts*, 161 S.W.3d 358, 371 (Mo. banc 2005) (overruled on other grounds).  "'Incompetency,' as this Court has said, is a state of being," which, to prove, requires more than evidence of prior negligent conduct. *Albanna v. State Bd. of Reg. for Healing Arts*, 293 S.W.3d 423, 436 (Mo. banc 2009).  Even acts of repeated negligence do not support finding a surgeon is incompetent when there is no evidence that shows a surgeon generally lacks a professional ability.  *Albanna*, 293 S.W.3d at 435.  Accordingly, to establish incompetence, there must instead be evidence of the surgeon's state of being, which shows the surgeon lacks the "knowledge, skill, experience, and available equipment which a reasonable man would realize that a contractor must have in order to do the work which he is employed to do without creating unreasonable risk of injury to others."  RESTATEMENT (SECOND) OF TORTS § 411 cmt. a. Despite the dissent's claims, the Tharps' expert never testified the surgeon was incompetent or lacked the knowledge, skill, and experience necessary to operate on patients like Mr. Tharp without creating an unreasonable risk of injury.

cholecystectomies, there is no evidence St. Luke's breached its duty to the Tharps to credential competent and careful physicians.

*C. Causation*

Even if a plaintiff establishes a breach of duty, a successful negligence claim requires the plaintiff to also prove the breach caused the plaintiff damage. *Hoover's Dairy*, 700 S.W.2d at 431. To prevail on their negligence claim, therefore, the Tharps must present evidence that credentialing Mr. Tharp's surgeon caused Mr. Tharp's injuries.

In all negligence cases, Missouri courts require the plaintiff to prove the defendant's acts were both the actual and proximate cause of the plaintiff's damage. *Callahan v. Cardinal Glennon Hosp.*, 863 S.W.2d 852, 862 – 63 (Mo. banc 1993). Actual cause means causation in fact. *Id.* at 861. The test for actual cause asks whether the plaintiff would have been injured but for some conduct on the defendant's behalf. *Id*. at 862. Proximate cause, also known as legal cause, means "the injury must be a reasonable and probable consequence of the act or omission of the defendant." *Id.* at 865. "Proximate cause inquires into the scope of foreseeable risk created by the defendant's act or omission." *Nail v. Husch Blackwell Sanders, LLP*, 436 S.W.3d 556, 563 (Mo. banc 2014). The proximate cause requirement ensures events that are "too far removed from the ultimate injury or damage" do not provide a basis for liability even if they are causal in fact. *Callahan*, 863 S.W.2d at 865.[4]

---

[4] This Court, in *Callahan*, illustrated this concept by explaining, "[C]arried to the ridiculous, 'but for' the mother and father of the defendant conceiving the defendant and bringing him into this world, the accident would not have happened. Obviously, this is not a basis for holding the mother and father liable." 863 S.W.2d at 865.

Comment b to § 411 of the Restatement of Torts explains, "The employer of a negligently selected contractor is subject to liability … for physical harm caused by his failure to exercise reasonable care to select a competent and careful contractor, **but only for such physical harm as is so caused**" by the employer's failure to use reasonable care in selecting the contractor. RESTATEMENT (SECOND) OF TORTS § 411, cmt. b (emphasis added). Further, "if the incompetence of the contractor consists in his lack of skill and experience…the employer is subject to liability for any harm caused by the contractor's lack of skill [or] experience …. **but not for any harm caused solely by the contractor's inattention or negligence**." *Id*. (emphasis added). The Restatement, therefore, does not allow recovery against a contractor's employer if the contractor simply causes harm of any type or in any manner. Rather, courts must ask "whether the precise manner of a particular injury was a natural and probable consequence of [the employer's] negligent act." *Lopez*, 26 S.W.3d at 156. Therefore, to prove causation under the negligent credentialing theory, a plaintiff must show: (1) but for the hospital's breach of its duty to credential a competent and careful physician, the plaintiff would not have been injured; and (2) the plaintiff's injuries were a natural and probable consequence of the breach of this duty. Otherwise, there is nothing to link a hospital's act of credentialing a physician to the patient's injuries.

When a physician injures a patient, he or she may be liable to the patient for negligence or other tort. The hospital, however, cannot be liable for the physician's negligence under a theory of negligent credentialing unless the patient's injuries were the result of the hospital's breach of a duty it owes to the patient. Because a hospital's duty to its patients is to credential competent and careful physicians, a hospital's act of

13

credentialing a physician is not the proximate cause of a patient's injuries unless the injuries are a consequence of receiving treatment from an unqualified physician. If a surgeon injures a patient while operating, not because he or she lacks the general competence or care necessary to perform the procedure, but rather because the surgeon simply was negligent in that particular instance, the patient's injuries are not the natural and probable consequence of credentialing the surgeon. After all, even a supremely qualified, competent, and careful physician may nevertheless injure a patient through an isolated negligent act. *See Tendai v. Mo. State Bd. of Registration for Healing Arts*, 161 S.W.3d 358, 369 (Mo. banc 2005) (overruled on other grounds). In this circumstance, recovery against the physician may be appropriate because the physician is the one at fault, but recovery against the hospital is not appropriate because the hospital bears no fault if it credentialed a competent and generally careful physician. Accordingly, a plaintiff cannot establish the causation element of a negligent credentialing claim unless there is evidence showing the patient's injuries were the natural and probable consequence of the surgeon's general incompetence or carelessness.

Here, the Tharps' evidence supports a finding of actual cause because but for St. Luke's credentialing the surgeon in violation of its bylaws, Mr. Tharp's surgeon would not have operated on him. The evidence, however, does not support a finding of proximate cause because Mr. Tharp's injuries were not within "the scope of foreseeable risk" created by St. Luke's act of credentialing Mr. Tharp's surgeon.[5] *Nail*, 436 S.W.3d at 563. The

---

[5] Under St. Luke's bylaws, failing to provide complete information in the application for staff privileges is grounds to automatically remove a physician from consideration. This

Tharps failed to offer any evidence showing Mr. Tharp's surgeon was unqualified to perform laparoscopic cholecystectomies and the surgeon's incompetency or general carelessness was the proximate cause of Mr. Tharp's injuries. Because there was no evidence showing Mr. Tharp's surgeon was unqualified in this manner and, therefore, likely to injury any patient, there was insufficient evidence to support a finding St. Luke's act of credentialing the surgeon caused Mr. Tharp's injuries. Accordingly, there was insufficient evidence to support their negligent credentialing claim.[6]

---

requirement does not appear to be limited to information related to the physician's qualifications. Thus, St. Luke's failure to follow this bylaw requirement may offend other purposes beyond ensuring the qualifications of the physicians it credentials.

[6] Although not raised in this appeal, the verdict director submitting the negligent credentialing claim was also deficient because it did not require the jury to find Mr. Tharp's surgeon to be unqualified. "[A] not-in-MAI jury instruction must follow substantive law by submitting the ultimate facts necessary to sustain a verdict." *Johnson v. Auto Handling Corp.*, 523 S.W.3d 452, 463 (Mo. banc 2017) (internal quotations omitted). Ultimate facts are facts the jury must find to return a verdict for the plaintiff. *See Lasky v. Union Elec. Co.*, 936 S.W.2d 797, 800 (Mo. banc 1997) ("The instruction must hypothesize the facts essential to the plaintiff's claim."). To hold a hospital liable for negligent credentialing, the ultimate facts a jury must find are: (1) the hospital credentialed an incompetent or generally careless physician; (2) the hospital was thereby negligent; and (3) as a direct result of such negligence, the plaintiff suffered damage. Litigants pursuing a negligent credentialing claim must not only present evidence of the physician's incompetence, but must also include this finding in the verdict director.

**Conclusion**

The Tharps failed to make a submissible case of negligent credentialing. The circuit court's judgment is reversed, and, pursuant to Rule 84.14, judgment is entered in favor of St. Luke's.

_____
W. Brent Powell, Judge

Fischer, C.J., Wilson, Russell, Breckenridge and Stith, JJ., concur;
Draper, J., dissents in separate opinion filed.


THOMAS E. THARP, *et al*.,  )
      )
      Appellants/Cross-Respondents,  )
      )
v.      )     No.  SC96528
      )
ST. LUKE'S SURGICENTER-  )
LEE'S SUMMIT, LLC,     )
      )
      Respondent/Cross-Appellant.  )

## DISSENTING OPINION

While the principal opinion would make a persuasive closing argument at trial on behalf of St. Luke's Surgicenter-Lee's Summit, LLC (hereinafter, "St. Luke's"), I believe the principal opinion reaches beyond the standard of review in order to overturn the jury's verdict. I disagree with its analysis, and therefore, I dissent.

St. Luke's challenges the circuit court's judgment overruling its post-trial motion for judgment notwithstanding the verdict (hereinafter, "JNOV"). The standard of review of the denial of a JNOV is essentially the same as the overruling of a motion for directed verdict. *Klotz v. St. Anthony's Medical Center*, 311 S.W.3d 752, 769 (Mo. banc 2010). "A case may not be submitted unless each and every fact essential to liability is predicated on legal and substantial evidence." *Moore v. Ford Motor Co.*, 332 S.W.3d

1

749, 756 (Mo. banc 2011) (quoting *Investors Title Co. v. Hammonds*, 217 S.W.3d 288, 299 (Mo. banc 2007)). To determine whether the evidence was sufficient to support the jury's verdict, an appellate court views the evidence in the light most favorable to the verdict and the plaintiff is given the benefit of *all* reasonable inferences. *Keveney v. Mo. Military Acad.*, 304 S.W.3d 98, 104 (Mo. banc 2010). This Court will reverse a jury's verdict for insufficient evidence only where there is a complete absence of probative fact to support the jury's conclusion. *Klotz, supra*.

The principal opinion finds Thomas E. Tharp and Paula M. Tharp's (hereinafter, "the Tharps") negligent credentialing claim was insufficient as a matter of law because they failed to present evidence showing Mr. Tharp's surgeon was incompetent generally. Demonstrating Mr. Tharp's surgeon was incompetent generally was not required, as in fact, the primary question to be established by the evidence and put to the jury was, and is, did the hospital sufficiently investigate and act upon any indication of incompetency.[1] *See Larson v. Wasemiller*, 738 N.W.2d 300, 306-09 (Minn. 2007); *Frigo v. Silver Cross Hosp. & Med. Ctr.*, 377 Ill. App. 3d 43, 72 (2007). Therefore, this assertion by the principal opinion mischaracterizes the evidence presented to the jury.

The Tharps presented the expert testimony of a professor of health care administration, specializing in health care credentialing, and a medical doctor,

---

[1] While the principal opinion recognizes a hospital must "ensure the competency of its medical staff" when granting staff privileges, the opinion then proceeds to evaluate whether Mr. Tharp's surgeon was unqualified. Being competent and being qualified are two separate inquires that are not equivalent determinations.

2

specializing in hepatobiliary and pancreas surgery.[2]  The health care administration

expert found St. Luke's fell "*very much below*" the standard of care in credentialing Mr.

Tharp's surgeon.  (Emphasis added).  Specifically, the expert testified to records of other

surgeries Mr. Tharp's surgeon conducted that should have been included in his

credentialing application but were not.  The expert further testified to the circumstances

surrounding some of those omitted surgeries, including one wherein the twenty-two year

old female patient died.  Additionally, the medical doctor opined Mr. Tharp's surgeon fell

below the standard of care in Mr. Tharp's surgery.

It "is the responsibility of the jury, not the court, 'to determine the credibility of

witnesses, resolve conflicts in testimony, and weigh evidence.'"  *Cox v. Kansas City*

*Chiefs Football Club, Inc*., 473 S.W.3d 107, 126 (Mo. banc 2015) (quoting *State v.*

*Letica*, 356 S.W.3d 157, 167 (Mo. banc 2011)).  "The jury is the sole judge of the

credibility of witnesses," and, as this Court has recently become fond of reiterating, it is

free to believe or disbelieve any, all, or none of a witness' testimony.  *Keveney*, 304

S.W.3d at 105 (quoting *Altenhofen v. Fabricor, Inc*., 81 S.W.3d 578, 584 (Mo. App.

W.D. 2002)).

Contrary to the principal opinion, the jury was presented evidence that Mr.

Tharp's surgeon was incompetent generally and incompetent in this case specifically,

hence supporting the Tharps' claims.  Because there was not a complete absence of

---

[2] This is surgery on the gallbladder, liver, and pancreas.

3

probative fact to support the jury's conclusion, as demanded by this Court's standard of review, I would affirm the circuit court's denial of St. Luke's motion for JNOV.

_____

GEORGE W. DRAPER III, JUDGE

4