CAMDEN COUNTY, Missouri by and through the CAMDEN COUNTY COMMISSION, et al., Petitioner–Appellant,

v.

LAKE OF the OZARKS COUNCIL OF LOCAL GOVERNMENTS, et al., Respondents.

No. SD 29045.

Missouri Court of Appeals, Southern District, Division Two.

March 16, 2009.

Ivan L. Schraeder, St. Louis, MO, for Appellant.

Marc H. Ellinger, Jefferson City, MO, for Respondents Lake of the Ozarks Council of Local Governments and James Dickerson in his Official Capacity.

Erin E. Lary, Springfield, MO, for Respondents James Dickerson Individually, Ron Lee, Robert O'Keefe, Jim Halloran, Bill Huskerson, and Wayne Morgan.

Conway L. Hawn, Salem, MO, for Respondent Anita Ivey.

DON E. BURRELL, Presiding Judge.

Camden County, Missouri ("County") appeals the dismissal of its petition against the Lake of the Ozarks Council of Local Governments ("Council"), its executive director, and seven individuals who allegedly held themselves out as members of Council's board and executive committee. By means of its rulings on a series of piecemeal motions to dismiss various portions of County's nine-count petition brought over time by various defendants,[1] the trial court ultimately dismissed all of County's claims. Because the factual averments of County's petition were not sufficient to state any claim for which relief could be granted, we affirm.

---

1. Perhaps as a result of the convoluted nature of these proceedings and the number and nature of the parties involved, this opinion is long and complicated. We can only hope that "blessed is he who endures to the end."

## I. Standard of Review

In reviewing a circuit court's dismissal of a petition, we must determine if the petition states any ground for relief, treating the facts pleaded as true and reasonably construing all inferences in favor of the appellant. *Kanagawa v. State*, 685 S.W.2d 831, 834 (Mo. banc 1985). "Where a trial court fails to state a basis for its dismissal, we presume the dismissal is based on the grounds stated in the motion to dismiss," but must affirm the dismissal if it can be sustained on any ground supported by the motion to dismiss. *Berkowski v. St. Louis County Bd. of Election Comm'rs*, 854 S.W.2d 819, 823 (Mo.App. E.D.1993); *Keys v. Nigro*, 913 S.W.2d 947, 951 (Mo.App. W.D.1996). "Conclusory allegations of fact and legal conclusions are not considered in determining whether a petition states a claim upon which relief can be granted." *Willamette Indus., Inc. v. Clean Water Comm'n*, 34 S.W.3d 197, 200 (Mo.App. W.D.2000). The rules of civil procedure "demand more than mere conclusions that the pleader alleges without supporting facts." *Pulitzer Publ'g Co. v. Transit Cas. Co.*, 43 S.W.3d 293, 302 (Mo. banc 2001). Such conclusions are to be disregarded in determining whether a petition states a claim. *Solberg v. Graven*, 174 S.W.3d 695, 699 (Mo.App. S.D.2005).

## II. Facts and Procedural Background

At the outset, we note that County's statement of facts violates Rule 84 by not constituting "a fair and concise statement of the facts ... without argument." Rule

84.04(c).[2] Nevertheless, because the issue before us is the sufficiency of the petition on its face, we exercise our discretion to review the appeal on its merits and not dismiss it based on the rule violation.

County filed a nine-count, forty-one page petition against: 1) Council; 2) James R. Dickerson in his official capacity (as Council's executive director); and 3) Dickerson, Anita Ivey, Ron Lee, Robert O'Keefe, Jim Halloran, Bill Huskerson, and Wayne Morgan in their individual capacities (collectively "Respondents"). County's lengthy, rambling petition averred a disorganized mixture of conclusory facts and legal conclusions. We have construed County's petition as an attempt to first set forth the various statutes and bylaws that govern Council then allege how Respondents acted in contravention to those statutes and bylaws. The following is a summary of County's allegations and the statutes and rules that govern them.

### A. Statutory Guidelines

Council was created pursuant to the State and Regional Planning and Community Development Act, sections 251.150–440. That Act provided that Council's "membership composition ... shall be in accordance with resolutions approved by the governing bodies of the local units in the region.... For the purposes of this determination, a county shall be as one local unit...."[3] Section 251.250. The identity of other persons or entities that comprised the membership of Council is

---

**2.** Unless otherwise indicated, all statutory references are to RSMo 2000 and all references to rules are to Missouri Rules of Court (2008).

**3.** Section 251.038 provides that "[t]he regional planning commissions shall include the state representatives and state senators of their region who shall serve without pay but who shall be reimbursed for their necessary and actual expenses incurred from the senate

or house contingent fund and shall be invited to all meetings in writing by the regional planning commission where the meetings involve the discussion of the expenditure of state funds." Section 251.250.2 further provides that "all regional planning commission members shall be electors of the state and reside within the region."

neither alleged in County's brief nor apparent from the record.

Council is required by statute to make an annual report of its activities to the legislative bodies of the local governmental units within the region, to members of the general assembly elected from districts lying wholly or partially within the region, and to the state department of economic development. Sections 251.310, 251.160. Council is to make and adopt a comprehensive plan for the development of the region, which shall be certified to the local governmental units within the region. Sections 251.320–350. Council "shall keep a record of its resolutions, transactions, findings, and determinations, which shall be a public record." Section 251.270. No compensation shall be paid to members of Council except for reimbursement of actual expenses. Section 251.260. In addition to these statutory requirements, Council also established its own rules of procedure which it adopted pursuant to statute and set forth in a document entitled Lake of the Ozarks Council of Local Governments By–Laws ("bylaws"). Section 251.270.

### B. Council's Bylaws

County alleged Council adopted its bylaws:

> to govern its operations, to establish offices, to set out its authority consistent with state law, to regulate membership, for the conduct of meetings, for elections and qualifications of elected officers and staff, for the duties of officers and the executive director, for committees, for fiscal controls including budget, and for other activities.

Bylaws section 7.1 directed that "[Council] shall have a board of directors composed of five members from each county. Two of those members shall be elected officials and the other three shall be representatives of the private sector or community-based organizations." "The board

shall meet at least quarterly." Under section 7.1a, "[t]he Executive Committee shall be chosen by the Council to transact the business of the Council for the Council except as provided herein. The Executive Committee shall be composed of eleven members, one of which will be a non-elected voting member and one of which will be a representative of minorities." Section 5.1 designated the following officers to be chosen by the members: 1) chairman; 2) vice chairman; 3) secretary; and 4) treasurer.

Under section 6.1, "[t]he executive director shall be the chief administrative officer of the Council and shall be in charge of and responsible for all professional planning work and of the administrative functions and offices of the Council." The executive director is to prepare an annual budget and present it to the Executive Committee pursuant to section 9.5.

Pursuant to section 4.1, all of Council's meetings are required to be public meetings. Council is required to keep minutes of its meetings and attach a copy of them to the notice of its next meeting. Under section 9.1, voting members of the Council were to be assessed dues on an annual basis to provide for the financial support of the Council.

### C. Allegations Against Council and Dickerson in His Official Capacity

Dickerson is the executive director of Council. County's petition accused Council and its executive director of the following misdeeds: There is no record that Dickerson filed an annual budget (as required by bylaws section 9.5) for the last several years. Council has not made the annual reports required under section 251.310 in several years. Council has failed to maintain: notices; proof of service of notices and agendas; advance

meeting agendas included as a part of a meeting notice; meeting agendas; accurate minutes of meetings; approval of minutes; record roll-call votes on matters decided by Council; information related to the subject matter of closed meetings conducted by Council and action taken during such meetings; and information of other activities conducted by authorized subunits of Council. Council failed to provide minutes of meetings to absent members and failed to permit absent members from casting absentee votes which they are required to allow under bylaws sections 4.5 and 4.6. Further, County alleges that Council has failed to collect dues from any member except County, which has paid assessments to Council since Council was created.

Dickerson has entered into service arrangements with several organizations on behalf of Council without authority to do so, including Lake Ozark 21st Century Fund (which he either owns or is an agent of) and County, to gain personally from the financial transactions and services to be performed. He has failed to reimburse Council monies other entities paid him for services when Council had already compensated him via his salary.

Dickerson executed a contract obtaining grant funds from the Missouri Department of Elementary and Secondary Education on behalf of County without its authorization. He has failed to participate in the Missouri Association of Councils of Governments (MACOG) by failing to attend meetings and pay dues, resulting in MACOG removing Council and County from participating in MACOG; thereby cutting off County's access to certain federal funds. Dickerson worked with Janet Vaughn, who held herself out to be an agent for County, to obtain funds from the State of Missouri and the Missouri Department of Elementary and Secondary Education in County's name without its permission in order to advance certain programs through which Dickerson and Vaughn personally gained.

### D. Allegations Against Certain Respondents in Their Individual Capacities

County's petition contends that O'Keefe, Halloran, Huskerson, and Morgan are not elected officials, are not representatives of County, have not been nominated by County or any participating municipalities, and were not appointed by County to serve the Council in any capacity. Lee holds himself out as chairman of the board and the Executive Committee; however, he is not an elected official and was not nominated by County to serve Council in any capacity. O'Keefe, Halloran, Ivey, Huskerson, and Morgan all hold themselves out to be members of Council's board and Executive Committee, but none are elected officials, except Ivey, and none were nominated by County to serve Council in any capacity. O'Keefe has made decisions on behalf of Council whereby Council has either paid money directly to him or to organizations that he has a material interest in and from which he gains financially. He has also received compensation as an employee of Council while acting as an officer.

After asserting these "Introductory Facts Common to All Claims," County alleged the following nine counts, incorporating into each count the allegations previously set forth: 1) "request for a declaratory judgment;" 2) "request for temporary restraining order, temporary injunction, & permanent injunction;" 3) "request for appointment of receiver;" 4) "intentional interference with business relationship by Respondents Dickerson, Lee, O'Keefe, Ivey, Halloran, Huskerson, and Morgan;" 5) "negligence;" 6) "breach of fiduciary relationship by Respondents

Dickerson, O'Keefe & Lee;" 7) "civil conspiracy by Respondents Dickerson, O'Keefe, & Vaughn[4];" 8) "request for an accounting;" and 9) "request for relief pursuant to the Missouri Sunshine Law."

### E. Procedural Background

■ Over the course of more than eighteen months, Council's attorney filed numerous motions to dismiss on behalf of Council, Dickerson in his official capacity, and on behalf of all the individual respondents,[5] except Ivey. Ivey had retained separate counsel and filed separate motions to dismiss on her own behalf. Ultimately, *via* five separate judgments entered at various times, the trial court dismissed all of County's claims against Respondents. County now appeals those dismissals.[6]

### III. Discussion

County raises eleven points on appeal. In Points I through IX, County contends the trial court erred in granting Respondents' motions to dismiss because each count pleaded sufficient facts to state a claim for which relief might be granted. In Point X, County claims the trial court erred in granting Respondents' motions to dismiss because County named all necessary and indispensable parties. In Point XI, County contends it pleaded sufficient facts to state a cause of action for declaratory relief in Count 1 because sovereign immunity does not bar declaratory judgment actions. Because we find other legal grounds support the dismissals attacked in County's points IX and X, we will not directly address these two points. We will address County's remaining points of alleged error in the order in which they relate to the counts of its dismissed petition.

### Count 1: Declaratory Relief (Point I)

■ Three elements are required to state a claim for a declaratory judgment: 1) "a justiciable controversy"; 2) "a legally protectible interest"; and 3) "a question ripe for judicial determination." *Cooper v. State*, 818 S.W.2d 653, 655 (Mo.App. W.D. 1991). Justiciability refers to "a real, substantial, presently existing controversy admitting of specific relief." *Id.* "A legally protectible interest involves a pecuniary or personal interest directly in issue or jeopardy, which is subject to some consequential relief, immediate or prospective." *Id.* "Ripeness requires the declaration sought to present a question appropriate and ready for judicial determination." *Id.*

In Count 1, County requested declaratory relief. In its brief, County only contends the trial court erred in granting the motion to dismiss as to Council and to Dickerson in his official capacity.

In Count 1, County alleged:

4. County eventually voluntarily dismissed all of its claims against Janet Vaughn.

5. Council's attorney entered his appearance on September 6, 2006. Apparently, although it is unclear from the record, he only entered his appearance on behalf of the individual respondents in their official capacities, despite the fact that all individual respondents (except Dickerson) were sued only in their individual capacities. County put the trial court on notice of this when it filed its motion for leave to file its first amended petition. Thereafter, Council's attorney filed a re-entry of appearance and motion for leave to adopt

pleadings and motions on behalf of all individual respondents, except Ivey. The next day, County filed a motion for interlocutory order of default against the individual respondents. It is unclear from the record how, or if, the trial court ruled on these motions.

6. There is no indication that the trial court treated the motions for dismissal as motions for summary judgment under Rules 55.27(a) and 74.04; thus, we consider only whether the petition itself states a claim for which relief might be granted. *Shapiro v. Columbia Union Nat. Bank & Trust Co.*, 576 S.W.2d 310, 315 n. 6 (Mo. banc 1978).

81. [County] restates the allegations of fact set out in paragraphs 1 through 80 of this Petition in this paragraph 81 as if fully restated herein as its allegations for paragraph 81.

82. [County] has provided verified facts showing that it has a right to participate in the affairs of [Council], that it has a right to participate in the nomination of members of the Board, that it has a right to select members of the Executive Committee, and that it has a right to elect the officers of [Council] as provided in the by-laws.

83. [County] has provided verified facts that Respondents have engaged in concerted actions to interfere with, deprive and to otherwise eliminate [County's] ability to effectively participate in [Council] as is intended in the enabling state law and the by-laws of [Council].

84. [County] has provided verified facts that Respondents are in violation of the state Sunshine Law, the by-laws of [Council], of the state enabling and reporting legislation, of the terms and conditions through which federal and state funds have been acquired and managed by [Council], and in the manner in which Respondents carry out their fiduciary duties owed to Petitioner and other local governmental entities encompassed by [Council's] territory.

85. [County] has provided verified facts that show that some of the Respondents have acted in a fraudulent manner using [County's] name without authorization of the County Commission to obtain state funds, to eliminate [County's] ability to participate in the governance of [Council], to interfere with [County's] rights to have information about the operations and management of [Council], and in opposition to [County's] statutory rights to obtain federal and state funds only accessible through [Council].

 Because County failed to meet the first requirement—to plead a justiciable controversy—we affirm the trial court's dismissal of Count 1. The petition offers no real, substantial, presently existing controversy admitting of specific relief. Instead, County's Count 1 is filled with broad, conclusory statements of fact and legal conclusions. Simply incorporating all prior paragraphs into Count 1 without identifying how those particular facts state a claim does not state a legally cognizable claim. *Nazeri v. Mo. Valley Coll.*, 860 S.W.2d 303, 317 (Mo. banc 1993). "A question is justiciable only where the judgment will declare a fixed right and accomplish a useful purpose." *Local Union 1287 v. Kansas City Area Transp. Auth.*, 848 S.W.2d 462, 463 (Mo. banc 1993). Point I is denied.

### Count 2: Injunctive Relief (Point III)

In Point III, County contends that its pleadings set forth facts which would entitle it to seek temporary and permanent injunctions.

 In Count 2, County asserts:

86. [County] restates the allegations of fact set out in paragraphs 1 through 85 of this Petition in this paragraph 86 as if fully restated herein as its allegations for paragraph 86.

87. [County] seeks the issuance of the various types of injunctive relief during the pendency of this litigation and as an equitable remedy at the conclusion to restrain all of the Respondents from continuing to act in any capacity for [Council].

88. [County] has already suffered injury by the intentional failures of Respondents to act to protect the interests of [County] from loss of federal and state funds to advance the economic interests

of [County] up to and continuing after the date of this litigation.

89. Respondents have no authority to act for [Council] and should be restrained from authorizing any actions during the processing of this matter in order to avoid causing additional injury to [County].

90. Respondents James R. Dickerson, Ron Lee, Robert O'Keefe, Jim Holloran [sic], Bill Huskerson, and Wayne Morgan, when holding themselves out as officers, employees, agents, and officials of [Council], have acted in a concerted manner to violate the by-laws of [Council], the state laws related to the governance and operation of [Council], the fiduciary responsibilities owed to [County] and the other local governments served by [Council] in the ways in which they have acted for personal gain and advantage and in furtherance of their personal goals and objectives, all in contravention of the current by-laws of [Council].

91. Respondents are continuing to engage in the conduct described in paragraphs 1 through 90 of this petition.

92. [County] has no way to identify what losses it will suffer from the unauthorized acts of respondents during the pendency of this litigation.

93. [County] is without any ability to recover any money damages from Respondents for the actions they have taken because such actions have violated [County's] rights to be properly represented through the efforts of [Council] in securing state and federal resources for economic, environmental, and homeland security purposes to which it may have a claim if [Council] were properly governed according to state law and its by-laws.

94. [County] is without any remedy at law because Petitioner has no ability to recover any money damages from Respondents for the actions they have taken because such actions have violated [County's] rights to be properly represented through the efforts of [Council] as the agents of [County] in the access to and acquisition of state and federal resources.

95. [County] will continue to be injured by Respondents if they are permitted to continue their activities during the pendency of this litigation.

"An indispensable requirement for obtaining injunctive relief is the wrongful and injurious invasion of some legal right existing in the plaintiff." *Supermarket Merch. & Supply, Inc. v. Marschuetz*, 196 S.W.3d 581, 585 (Mo.App. E.D.2006) (internal citation omitted). "A request for injunctive relief must be based on a real apprehension that future acts are not only threatened but will in all probability be committed." *Beavers v. Recreation Ass'n of Lake Shore Estates, Inc.*, 130 S.W.3d 702, 716 (Mo.App. S.D.2004) (internal citations omitted). County's petition does not set forth facts (as opposed to conclusions) demonstrating a sufficient invasion of some legal right. County alleges it has already "suffered injury ... from loss of federal and state funds," but does not set forth with particularity what those funds are or what acts will likely be committed in the future. Point III is denied.

### Count 3: Appointment of a Receiver (Point IV)

In Count 3, County requested the appointment of a receiver. In Point IV, County claims its petition contained sufficient facts to establish the existence of a fiduciary relationship between County and Respondents; that Respondents breached their fiduciary duty to properly administer Council in accordance with its bylaws and

state law; and that the breach warranted the appointment of a receiver to stop it.

Rule 68.02(a) states:

Whenever in a pending legal or equitable proceeding it appears to the court that a receiver is necessary to keep, preserve and protect any business, business interest or property, ... the court ... may appoint a receiver whose duty it shall be to keep, preserve and protect ... that which the receiver is ordered to take into the receiver's charge.

It is essential to the appointment of a receiver over property, funds or assets, that the applicant show either that he has a clear right or apparent right or title in or to the property itself, that he has some lien upon it, or that the property constitutes a special fund to which he has a right to resort for the satisfaction of his claim. That is to say, the property itself must be involved directly, not incidentally. Without such a showing the property is not involved in the proceeding, and the court is without power to appoint a receiver at any stage of the controversy.

*Kansas City v. Markham,* 339 Mo. 753, 99 S.W.2d 28, 30 (1936).

■■■■ "Absent threatened destruction or dissipation of the property, or where there is no good cause to believe that benefit would result from the appointment of a receiver, then the court should decline to make such an appointment." *Sangamon Assocs., Ltd. v. Carpenter 1985 Family P'ship,* 165 S.W.3d 141, 146 (Mo. banc 2005) (quoting *Lynch v. Lynch,* 277 S.W.2d 692, 694 (Mo.App.K.C.D.1955)). "The power to act rests very largely within the sound discretion of the court. A receiver should be appointed only when the court is satisfied that the appointment will promote the interests of one or both parties, that it will prevent manifest wrong, imminently impending, and that the injury resulting will not be greater than the injury sought to be averted." *Id.* (emphasis omitted).

■■■■ Here, County's petition simply does not aver facts sufficient to invoke any legal grounds for the appointment of a receiver. County fails to identify any specific property to which it has a clear right of ownership or a lien against any particular fund it might use to satisfy its claims. Point IV is denied.

### Counts 4, 5, 6, and 7: Claims in Tort (Points V, VI, VI, and VII)

In Counts 4 (intentional interference with business relationship by Dickerson, Lee, O'Keefe, Ivey, Halloran, Huskerson, and Morgan), 5 (negligence against Dickerson, Lee, O'Keefe, Ivey, Halloran, Huskerson, and Morgan), 6 (breach of fiduciary relationship by Dickerson, O'Keefe, and Lee), and 7 (civil conspiracy by Dickerson and O'Keefe),[7] County alleged tort claims that all required County to plead sufficient facts to support the essential element of damages. *See Nazeri,* 860 S.W.2d at 316 (tortious interference with a contract or business expectancy); *Hoover's Dairy, Inc. v. Mid–Am. Dairymen, Inc.,* 700 S.W.2d 426, 431 (Mo. banc 1985) (negligence); *Klemme v. Best,* 941 S.W.2d 493, 496 (Mo. banc 1997) (breach of fiduciary duty); *Envirotech, Inc. v. Thomas,* 259 S.W.3d 577, 586 (Mo.App. E.D.2008) (civil conspiracy).

In its petition, County pleaded the following averments related to damages:

---

**7.** This claim was also asserted against Vaughn, but, as previously noted, all claims against Vaughn were voluntarily dismissed.

## COUNT 4. INTENTIONAL INTERFERENCE WITH BUSINESS RELATIONSHIP BY RESPONDENTS DICKERSON, LEE, O'KEEFE, IVEY, HALLORAN, HUSKERSON, and MORGAN

. . . .

110. [County] has suffered damage because it has been kept from participating in the governance of [Council]. It has suffered the loss of access to federal and state funds for economic development and environmental projects. [County] has been ordered to repay grant funds received through [Council] in the past because Respondents have intentionally failed to maintain and manage the organization and the records associated with the granted moneys.

. . . .

## COUNT 5. NEGLIGENCE

. . . .

116. As a direct and proximate result of the breaches of duties by Respondents Dickerson, Lee, O'Keefe, Ivey, Halloran, Huskerson, and Morgan, [County] has suffered damages in the loss of resources available to it and by subjecting it to claims for refunds of moneys.

. . . .

## COUNT 6. BREACH OF FIDUCIARY RELATIONSHIP BY RESPONDENTS DICKERSON, O'KEEFE & LEE

. . . .

126. Through the actions and failures to act by Respondents Dickerson [sic] O'Keefe [sic] and Lee, they caused [County] to be damaged in reputation and actual monetary amounts to be demonstrated in this matter.

. . . .

## COUNT 7. CIVIL CONSPIRACY BY RESPONDENTS DICKERSON, O'KEEFE, & VAUGHN

. . . .

133. [County] was damaged by such conduct of Respondents Dickerson and O'Keefe [sic] others not yet identified because such funds were taken from the assessments that [County] paid to [Council] for services and were funds to provide services to [County] in obtaining and managing federal and state funds for economic development, environmental protection actions, and for homeland security protections, as well as for other governmental services of benefit to [County].

. . . .

139. [County] was damaged by such conduct of Respondents Dickerson and O'Keefe and Vaughn, and others not yet identified, because such funds were taken from the assessments that [County] paid to [Council] for services and were funds to provide services to [County] in obtaining and managing federal and state funds for economic development, environmental protection actions, and for homeland security protections, as well as for other governmental services of benefit to [County].

County's brief alleges that its petition contained factual averments sufficient to properly assert the necessary element of damages. We disagree.

In Count 4, County fails to allege how it was kept from participating in the governance of Council; what state and federal funds it lost access to; and what grant money has been repaid. In Count 5, County fails to allege what resources available to it were lost and what claims for refunds it has been subjected to. In Count 6, County does not allege how its reputation was damaged or by what monetary amounts it has been damaged. In

Count 7, County fails to allege the assessments it paid, what funds were taken from those assessments, and what services County was deprived of. To sufficiently state a claim for relief, a petition must set forth allegations of fact supporting each essential element of the claim for which the plaintiff seeks relief. *Lonero v. Dillick*, 208 S.W.3d 323, 329 (Mo.App. E.D. 2006). We recognize that the nature of the conduct asserted (e.g., civil conspiracy, breach of fiduciary relationship, etc.) might make it difficult to determine with exactitude the damages incurred, but something more than a general conclusory allegation of loss of federal and state funds must be plead. *See Tindall v. Holder*, 892 S.W.2d 314, 322 (Mo.App. S.D.1994) ("the difficulty in proving an element of a cause of action does not dispense with the necessity of making proof."). Because County failed to sufficiently plead facts showing it was damaged in each of these counts, we conclude the trial court did not err in sustaining Respondent's motion to dismiss them. Points V, VI, VII and VIII are denied.

### Count 8: Request for an Accounting (Point IX)

■ In Count 8, County requested an accounting. Four elements must be plead to invoke the equitable principles necessary to seek an accounting: 1) "the need for discovery;" 2) "the complicated nature of the accounts;" 3) "the existence of a fiduciary or trust relationship;" and 4) "the inadequacy of legal remedies." *Tobias v. Korman*, 141 S.W.3d 468, 474 (Mo.App. E.D.2004).

■ In Count 8 of its petition, County alleged:

140. [County] restates the allegations of fact set out in paragraphs 1 through 139 of this Petition in this paragraph 140 as if fully restated herein as its allegations for paragraph 140.

141. [County] has no way to determine all of the amounts that were obtained by any and all of the Respondents' personal gain through their respective improper activities when holding themselves out as agents, employees, officers and officials of [Council].

These allegations did not cover *any* of the elements necessary to state a claim for an accounting. Count 8 was properly dismissed. Point IX is denied.

### Count 9: Request for Relief Pursuant to the Missouri Sunshine Law (Point II)

In Point II, County contends the trial court erred in dismissing this count because County is within the class of enumerated entities set forth in section 610.027.1 that have standing to bring an action under the Sunshine Law.

■ County's Count 9 alleged:

142. [County] restates the allegations of fact set out in paragraphs 1 through 141 of this Petition in this paragraph 142 as if fully restated herein as its allegations for paragraph 142.

143. Respondents Dickerson, Ivey, Lee, O'Keefe, Halloran, Huskerson, and Morgan, when holding themselves out as officers, board members, and persons with authority to act for [Council], failed to create and maintain the records of public meetings, announcements of public meetings, and roll call votes taken at public meetings. They failed to properly announce, conduct, and make records related to closed meetings of a public body. They failed to produce records required to be maintained by public bodies, including but not limited to contracts, annual budgets, election of officers, appointment of board members and others assigned to act for [Council].

144. The actions and failures to act as identified in the paragraphs next above

were intentional acts of the Respondents used to conceal their wrongful actions and the financial benefits that accrued to certain Respondents.

145. The failure to maintain records and to act in compliance with the state Sunshine Law subjects such Respondents to fines and penalties up to $ 5,000 per action pursuant to Section 610.027 RSMo.

County averred that the individual respondents "[held] themselves out as officers, board members, and persons with authority to act for [Council] . . .," not that these respondents actually *were* members. In fact, implicit in the language "[held] themselves out as" is the assertion that they were *not* members of this body. Without deciding whether County has standing to bring an action under the Sunshine Law, we affirm the trial court's dismissal because County failed to plead that any of these individual respondents were members of a public governmental body and because Count 9 contained no allegations against Council or against Dickerson in his official capacity. As mentioned previously, simply incorporating all prior paragraphs into a count without identifying how those particular facts state a claim is not sufficient. *Nazeri*, 860 S.W.2d at 317. Count 9 was properly dismissed. Point II is also denied, and the trial court's judgments of dismissal are affirmed.

LYNCH, C.J., and RAHMEYER, J., Concur.